Rel: August 7, 2026

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## SPECIAL TERM, 2026

_____

### CL-2026-0020

_____

**Shannon Lavon Yancey**

**v.**

**Jaime Nicole Wheeler**

**Appeal from Morgan Circuit Court**
**(DR-18-259.02)**

FRIDY, Judge.

Shannon Lavon Yancey ("the father") appeals from a custody-modification judgment of the Morgan Circuit Court ("the trial court") awarding Jaime Nicole Wheeler ("the mother") sole physical custody of the parties' minor child, A.Y. ("the child"), after determining that the

best-interest-of-the-child standard governed the mother's custody-modification petition. For the reasons set forth herein, we reverse the judgment and remand the cause.

Background

The parties were never married. On November 21, 2019, the trial court entered a judgment ("the settlement judgment") adjudicating the father as the legal and biological father of the child, who was born in 2017. In the settlement judgment, the trial court ratified and incorporated a settlement agreement into which the parties had entered ("the settlement agreement"). In the settlement agreement, the parties agreed that they would share joint legal custody of the child, with the father being awarded sole physical custody. The settlement judgment awarded the mother visitation with the child during the first and third weeks of each month from Sunday at 9:00 a.m. until the following Friday at 6:00 p.m. It further provided for the mother's visitation with the child during designated holidays and special events.

On October 4, 2023, the mother commenced the present action by filing a petition to modify the settlement judgment and to hold the father in contempt. She alleged that a material change in circumstances had

occurred since the entry of the settlement judgment that warranted a modification of custody. Specifically, she alleged that the child was unsafe in the father's home because the father consumed alcohol "heavily," maintained an unkempt residence, permitted firearms to remain accessible to the child, and otherwise failed to provide a safe home environment. She further alleged that the child no longer felt safe in the father's home, that the father had failed to comply with the settlement judgment, and that awarding her sole physical custody would materially promote the child's welfare and best interests. In her contempt petition, the mother alleged that the father had violated the settlement judgment by continuing to consume alcohol while the child was present, by allowing his significant other to spend the night while the child was present, and by attempting to prevent the mother from picking up the child from school. The father filed an answer denying the allegations in the mother's petition.

On February 28, 2024, the father moved for leave to amend his pleadings to assert a counterclaim, and the trial court granted that motion the same day. In his amended answer, the father denied the allegations in the mother's petition and asserted that no material change

3

in circumstances had occurred since the entry of the settlement judgment. In his counterclaim, he likewise alleged that no material change in circumstances had occurred, requested that the trial court deny the mother's requested relief, sought an award of attorney's fees, and requested such other relief as the trial court deemed appropriate. On March 14, 2024, the mother replied to the counterclaim, denying its material allegations and demanding strict proof thereof.

On April 22, 2024, the father moved for leave to amend his counterclaim and, that same day, filed an amended counterclaim and petition for a rule nisi. In addition to reasserting the allegations and requests for relief contained in his original counterclaim, the father alleged that changes in circumstances since the entry of the settlement judgment warranted modification of that judgment by reducing the mother's visitation time. The father further alleged that the mother had improperly exercised her decision-making authority regarding the child's medical care by enrolling the child in counseling and mental-health treatment without involving him, authorizing medication that he believed was contrary to the child's best interests, refusing to provide him

4

with the child's medication, and causing the child to be medicated or overmedicated.

The father also sought to have the mother held in contempt. He alleged that the mother had communicated to the child her disrespect for the father's rules and instructions, had discussed the parties' legal proceedings with the child, and had failed to notify him of the child's counseling and medical appointments, all in violation of the parenting provisions incorporated into the settlement judgment. He further alleged that the child exhibited increased behavioral problems at school following periods of custody with the mother. Based on those allegations, the father requested that the trial court modify the mother's visitation by requiring her weekend visitation periods to end on Sunday evening, award him final decision-making authority regarding the child's medical care, hold the mother in contempt, award him attorney's fees, and grant such other relief as the trial court deemed appropriate.

Subsequent to the parties' additional amendments to their pleadings and further allegations of contempt, the trial court conducted a trial on January 7 and 8, 2025. The mother testified that she and the father had begun living together in 2016 and had been residing together

when the child was born in 2017. She testified that they had lived in a single-wide mobile home located in front of the double-wide mobile home in which the father resided at the time of the trial. She further testified that her two older children from a previous marriage ("the older children") had also resided with them during that time.

The mother testified that, when the parties entered into the settlement agreement, they were no longer residing together and that she was then residing in Boaz. She testified that, after the settlement judgment had been entered, she moved back in with the father in July 2021 and lived with him again for a couple of years. According to the mother, the older children also moved into the father's residence at that time.

The father testified that he had lived in his current residence in Union Grove for approximately three years and had lived in the adjacent single-wide mobile home for more than ten years before that. He testified that, before the parties had entered into the settlement agreement, he, the mother, the child, and the older children had lived together in the single-wide mobile home. According to the father, after the parties had

entered into the settlement agreement, they and all the children resumed living together.

The mother testified that, after she and the father had resumed their relationship in July 2021, the relationship initially was "fine" and felt like a "honeymoon period." She testified that, as time went on, "the drinking got heavier for both of [them]." According to the mother, she experienced what she described as mental and verbal abuse until early 2023, when the relationship became physically abusive. She further testified that the father frequently screamed at her and the children and that, in early 2023, she began standing up for herself and the children.

The mother testified that she left the father's residence at the end of June 2023 and never returned to live there. She testified that she and the children stayed with a friend for approximately one month while she looked for another place to live. According to the mother, she entered into a one-year lease for a residence in Huntsville beginning August 1, 2023. She testified that, after that lease had expired, in August 2024, she moved into her mother's house, where she was residing at the time of the trial. She testified that she had not been inside the father's residence since she left in June 2023.

The father testified that he and the mother had argued during their relationship and described some of those arguments as heated. He acknowledged that he had raised his voice to the mother and that, since 2019, he had also raised his voice to the child and the older children. He testified that it was possible that he had yelled at them while intoxicated, although he was not sure. He denied ever physically abusing the mother or the child and denied hitting the child.

The father acknowledged that he had had a drinking problem but testified that he no longer had one. He testified that he had stopped drinking completely approximately two or three months before the trial. Before that, he testified, he had reduced his alcohol consumption to once or twice a week and drank only when the child was not in his care. He testified that he maintained his sobriety by staying busy and that he was not attending Alcoholics Anonymous meetings or any similar program. He also testified that he was not experiencing any physical symptoms from no longer drinking alcohol.

The mother testified that, "typically on numerous occasions," the child was "absolutely filthy" when she picked him up from the father's house. She said that his skin and clothing were dirty and that there had

been occasions when she could rub dirt from the child's neck because he was "so coated in it." She further testified that the child appeared "like he ha[d]n't bathed for days" when he returned to her care and that his clothing often was too small. She testified that she wanted the child to have "a stable and safe home" and "a place where he can grow up to be a decent human being." She also testified that the older children lived with her full time. At the time of the trial, she was residing in her mother's house, was not on the mortgage encumbering her mother's house, and did not have a lease for the house.

The father disputed the mother's testimony regarding the child's condition. He testified that the child bathed daily and denied that the child returned to the mother dirty after being in his care. Although he acknowledged that some of the child's clothes had become too small because the child had outgrown them, he testified that he had purchased new clothing and that the child had plenty of clothes that fit.

On October 29, 2025, the trial court entered a final judgment resolving the parties' claims. The trial court found, in pertinent part:

> "The parties['] original agreement was that the parties would share joint legal custody with the [f]ather having sole physical custody. However, the parties['] actual arrangement was essentially 50/50 custody. As the parties were living as if they

9

> each had joint physical custody, then [the trial court] finds that they were acting under a joint legal and joint physical custody arrangement. Considering this, [the trial court] finds that the appropriate standard for modification is the best interest of the child standard."

Applying that standard, the trial court awarded the mother sole physical custody of the child while continuing the parties' joint legal custody. The trial court stated that the parties were encouraged to exercise liberal visitation and provided that, if they could not reach an agreement regarding visitation, they were to follow the Morgan County Standard Visitation Schedule. The trial court also awarded the mother final decision-making authority regarding the child's educational needs and healthcare decisions. The trial court denied the parties' remaining requests for relief.

The father filed a motion to alter, amend, or vacate the modification judgment; a motion for a new trial or, alternatively, to reopen the evidence; and a motion to stay enforcement of the judgment. After the trial court denied those motions, the father filed a timely notice of appeal.

Standard of Review

This court has held that whether a trial court applied the proper custody-modification standard presents a question of law; accordingly,

10

our review is de novo. <u>C.T. v. E.R.</u>, 373 So. 3d 840, 842 (Ala. Civ. App. 2022) (quoting <u>Wood v. Wood</u>, 29 So. 3d 908, 911 (Ala. Civ. App. 2009)).

Analysis

The father contends that the trial court erred by modifying custody by applying the best-interest standard set forth in <u>Ex parte Couch</u>, 521 So. 2d 987 (Ala. 1988), rather than the heightened standard established in <u>Ex parte McLendon</u>, 455 So. 2d 863 (Ala. 1984). He contends that the settlement judgment expressly awarded him sole physical custody of the child and granted the mother visitation rights. According to the father, because the settlement judgment constituted a prior judicial determination awarding him sole physical custody, the mother was required to satisfy the <u>McLendon</u> standard before custody could be modified.

"The determination whether the <u>McLendon</u> standard or the 'best interests of the child' standard set forth in <u>Couch</u> applies turns on whether there has been a previous custody determination as between the two parents." <u>Whitehead v. Whitehead</u>, 214 So. 3d 367, 370 (Ala. Civ. App. 2016). When there has been no prior judicial custody determination favoring either parent, or when a prior judgment awards the parties joint

11

legal custody and joint physical custody without preferring one parent, the applicable standard in a subsequent custody-modification action is the best-interest-of-the-child standard. Id. Conversely, when a prior custody judgment favors one parent by awarding that parent sole physical custody, the McLendon standard governs any subsequent custody-modification action. Id.

Under the best-interest standard, a party seeking a custody modification must show that a material change in circumstances has occurred since the entry of the prior judgment and that modifying custody in the manner requested is in the child's best interests. D.M.J. v. D.N.J., 106 So. 3d 393, 396 (Ala. Civ. App. 2012). Under the McLendon standard, the noncustodial parent seeking a custody modification must establish that he or she is a fit custodian, that a material change affecting the child's welfare has occurred, and that the benefits of the proposed modification will more than offset the disruption caused by uprooting the child. Gordon v. Gordon, 231 So. 3d 347, 353 (Ala. Civ. App. 2017).

Here, the settlement judgment expressly awarded the father sole physical custody of the child, which normally would mean that any modification of physical custody would implicate the McLendon

standard. The trial court, nevertheless, concluded that the parties' "actual arrangement was essentially 50/50 custody," that, since the entry of the settlement judgment, they had been "living as if they each had joint physical custody," and that they were therefore "acting under a joint legal and joint physical custody arrangement." Based on those findings, the trial court determined that the best-interest standard, rather than the McLendon standard, governed the mother's petition.

We conclude that the parties' actual custody arrangement after the entry of the settlement judgment did not alter the applicable modification standard. This court has explained that, when a prior judicial custody determination favors one parent, " 'it makes no difference that the parties ... had worked out an informal arrangement to care for the child[ren]' " in determining the standard governing a custody-modification proceeding. Lawley v. Byrd, 689 So. 2d 191, 193 (Ala. Civ. App. 1997) (quoting Ex parte Bryowsky, 676 So. 2d 1322, 1325 (Ala. 1996)). Likewise, our supreme court has explained that, although the parties' informal arrangement and its effect on the child are factors to consider in determining whether a custody modification would materially promote the child's welfare, the arrangement itself does not constitute a waiver

13

by a preferred party under a prior custody judgment of his or her right to that preference. Ex parte Bryowsky, 676 So. 2d at 1325. Thus, although the parties' actual custody arrangement could be considered in determining whether the mother satisfied the McLendon standard, it did not change the standard governing her custody-modification petition.

The mother, nevertheless, argues in her responsive brief that the rationale underlying the McLendon standard is inapplicable because, she says, the parties were actually exercising joint physical custody. Therefore, she argues, awarding her sole physical custody would not "uproot" the child from an established custodial arrangement. Mother's brief at 76. Specifically, she asserts that the child spent nearly equal amounts of time with each parent and that the visitation schedule reflected "essentially ... a 50/50 joint custody arrangement." Id. at 48. We disagree with the mother's characterization of the evidence. The settlement judgment awarded the mother visitation from Sunday at 9:00 a.m. until Friday at 6:00 p.m. on the first and third weeks of each month. That schedule afforded the mother approximately five and a half days of parenting time during each of those weeks, or approximately eleven days each month. Thus, contrary to the mother's repeated assertions, the

settlement judgment did not provide the parties with nearly equal parenting time. Instead, the mother exercised custody of the child for approximately one-third of the child's time under the settlement judgment. Accordingly, the factual premise underlying her argument -- that the custody arrangement itself reflected a joint-physical-custody schedule -- is unsupported by the terms of the settlement judgment.

The mother relies heavily on New v. McCullar, 955 So. 2d 431 (Ala. Civ. App. 2006) (per Murdock, J., with one judge concurring and three judges concurring in the result), arguing that, as in that case, the substance of the parties' custody arrangement should control over the labels used in the judgment. Her reliance is misplaced. In New, the divorce judgment expressly awarded the parties "'joint legal and joint physical custody'" and provided for the child in that case to reside with the father in that case almost one-half of every month during the school year, approximately one-half of each summer, and approximately one-half of designated holiday periods. Id. at 435. The main opinion in New concluded that the arrangement fit the statutory definition of joint physical custody under § 30-3-151(3), Ala. Code 1975, because it assured the child "'frequent and substantial contact with each parent.'" Id.

15

Although the judgment also referred to that child's "primary residence" being with the mother in that case and described that father's custodial periods as "visitation," the main opinion held that those provisions did not contradict the judgment's express award of joint physical custody. Id. at 435-36. To the extent that the divorce judgement was internally inconsistent, the main opinion concluded that, when considered in its entirety, the judgment created a joint-physical-custody arrangement. Id. at 436.

Unlike in New, the settlement judgment in this case contains no internal inconsistency requiring judicial interpretation. It unequivocally awards the father sole physical custody while granting the mother specified visitation. Nothing in the settlement judgment labels the parties as joint physical custodians or otherwise creates conflicting custody provisions. Further, the visitation schedule does not resemble the arrangement in New. Whereas the father in New exercised custody of his child nearly one-half of the time throughout the year, the mother's visitation with the child in this case amounted to approximately one-third of the time each month. Consequently, New does not support the

16

mother's contention that the settlement judgment should be construed as creating a joint-physical-custody arrangement.

Similarly, the mother's reliance on <u>Grantham v. Grantham-Potts</u>, 369 So. 3d 672 (Ala. Civ. App. 2022), is unpersuasive. That case, like <u>New</u>, also involved internally inconsistent language in a custody judgment. There, the divorce judgment referred to joint physical custody but awarded the father visitation only one weekend each month, seven days during the summer, and alternating holidays. <u>Id.</u> at 674-75. This court found that the evidence supported the conclusion that the parties "did not actually engage in shared physical custody of [their] child but, rather, that the mother [in that case] had sole physical custody of [their] child with the father [in that case] exercising visitation." <u>Id.</u> at 679. Accordingly, this court held that the <u>McLendon</u> standard applied because the prior judgment, in substance, awarded the mother in that case sole physical custody. <u>Id.</u> Here, unlike in <u>Grantham</u>, the settlement judgment is not internally inconsistent. It expressly awards the father sole physical custody and the mother visitation, and it provides custody and visitation periods consistent with those expressed awards.

The mother also contends that, because the parties actually exercised what she characterizes as joint physical custody, the designation of the father as the sole physical custodian should be disregarded. That argument, however, is inconsistent with Bardolf v. Bardolf, 271 So. 3d 821 (Ala. Civ. App. 2018). There, the father in that case argued that, although the divorce judgment had awarded the mother in that case sole physical custody, subsequent modification judgments effectively created a joint-physical-custody arrangement because they expanded his visitation until the parties shared equal parenting time on an alternating weekly basis. Id. at 826. This court distinguished New, explaining that, unlike the judgment in New, the divorce judgment in Bardolf "directly and unequivocally granted physical custody to one party." Id. at 827. Although the subsequent modification judgments in that case enlarged that father's visitation periods until they equaled that mother's custodial periods, the parties "did not choose to submit any modification of physical custody to the trial court for approval." Id. Therefore, because "the designation of the physical custodian ... had not changed since the entry of the divorce judgment," this court held that the trial court had correctly applied the McLendon standard. Id.

18

Here, although the parties in this case may have shared parenting time and otherwise conducted themselves as though they exercised joint physical custody, the settlement judgment expressly awarded the father sole physical custody, and the parties never obtained a judicial modification of that custody designation. Thus, the parties' actual exercise of parenting time did not alter the applicable custody-modification standard.

Similarly, the parties' decision to resume cohabitation after entry of the settlement judgment did not alter the applicable custody-modification standard. In Rivera v. Sanchez, 297 So. 3d 1242 (Ala. Civ. App. 2019), this court rejected the argument that divorced parents' postdivorce cohabitation, which allegedly resulted in "a sharing of parental responsibilities and a continuation of their lives as a united family unit," altered the legal effect of the prior custody judgment. Id. at 1247. This court held that the trial court had correctly applied the McLendon standard notwithstanding the parties' cohabitation. Id. Although the parties in this case resumed cohabitation for a period and shared parenting responsibilities, that arrangement did not alter the

legal effect of the settlement judgment awarding the father sole physical custody or change the applicable custody-modification standard.

Finally, the mother's argument that the child would not be "uprooted" if custody were modified concerns whether she can ultimately satisfy the heightened burden imposed by the McLendon standard, not whether the McLendon standard applies. Having concluded that the trial court applied the incorrect legal standard, we decline to reweigh the evidence to determine whether the mother satisfied that standard. See Rich v. Rich, 887 So. 2d 289, 302 (Ala. Civ. App. 2004) (plurality opinion) (quoting Ex parte R.T.S., 771 So.2d 475, 477 (Ala. 2000)) (explaining that "'[t]he trial court must be allowed to be the trial court; otherwise, we (appellate court judges and justices) risk going beyond the familiar surroundings of our appellate jurisdiction and into an area with which we are unfamiliar and for which we are ill-suited -- factfinding'"). The appropriate remedy is to remand the cause for the trial court to evaluate the evidence under the proper standard. See id. at 302.

## Conclusion

Based on the foregoing, we conclude that the trial court applied the incorrect legal standard in modifying custody. The settlement judgment

20

awarded the father sole physical custody of the child, and neither the parties' informal custody arrangement nor their subsequent cohabitation altered the legal effect of that judgment. Accordingly, the trial court should have evaluated the mother's petition under the <u>McLendon</u> standard. Because it instead applied the best-interest standard, the modification judgment is due to be reversed and the cause remanded for further proceedings consistent with this opinion.[1]

REVERSED AND REMANDED.

Moore, P.J., and Edwards, Hanson, and Bowden, JJ., concur.

---

[1]Because of our disposition of the father's argument that the trial court applied the wrong standard in modifying custody, we pretermit consideration of his other arguments on appeal.